**Harry PLUMMER, Plaintiff-Appellee, Cross-Appellant,**

v.

**LEDERLE LABORATORIES, DIVISION OF AMERICAN CYANAMID COMPANY, Defendant-Appellant, Cross-Appellee.**

**Nos. 692, 1366, Dockets 86–7768, 86–7798.**

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1987.

Decided May 19, 1987.

---

David Jaroslawicz, New York City (Alfred S. Julien, Stuart A. Schlesinger, Edward J. Sanocki, Jr., Julien & Schlesinger, New York City, on the brief), for plaintiff-appellee, cross-appellant.

J. Peter Coll, Jr., New York City (Charles W. Gerdts, III, Laurie J. Gentile, Donovan, Leisure, Newton & Irvine, New York City, on the brief), for defendant-appellant, cross-appellee.

Before PRATT and MINER, Circuit Judges, and TENNEY, District Judge.[*]

TENNEY, District Judge.

This is an appeal and cross-appeal from a final judgment of the United States District Court for the Southern District of New York, Sprizzo, *Judge*, entered upon inter-

---

[*] The Honorable Charles H. Tenney, Senior District Court Judge of the United States District Court for the Southern District of New York, sitting by designation.

rogatory answers following two jury trials. The first trial commenced on October 1, 1984, and at the conclusion thereof the jury answered special interrogatories and returned a general verdict for plaintiff Harry Plummer of $3.2 million. The district court reserved decision on the motion of defendant Lederle Laboratories ("Lederle") to set aside the verdict, and ordered a second trial limited to the issue of proximate causation. The second trial commenced on June 2, 1986, and at the conclusion thereof, the jury returned interrogatory answers in favor of Plummer. A final judgment awarding $3.2 million in damages to Plummer was entered on August 13, 1986.

Lederle appeals from the district court's final judgment as well as its rulings and orders denying Lederle's motions for summary judgment, judgment notwithstanding the verdict, or a new trial. Plummer cross-appeals from the district court's order directing a second trial on the issue of proximate causation and refusing to award him interest from the date of the first jury's verdict. We vacate the district court's judgment and remand for entry of judgment notwithstanding the verdict. The cross-appeal is rejected in all respects.

## BACKGROUND

This products liability action involves Orimune, a polio vaccine manufactured by Lederle. All agree that the development of vaccines against poliomyelitis has been a major achievement of modern preventive medicine. Ironically, the very success of the polio vaccines underlies the charge of negligence in this action.

At the outset, it should be noted that there are two different types of polio vaccine. Oral polio vaccine, technically referred to as poliovirus vaccine, live, oral, trivalent ("OPV"), developed by Dr. Albert Sabin, contains three live but weakened strains of virus that nonetheless provoke the vaccinee's immune system to respond and develop antibodies effective against the wild strain of the virus. Injected polio virus ("IPV"), developed by Dr. Jonas Salk, contains killed, or inactivated strains of virus. The Salk IPV vaccine was developed first and the Sabin OPV vaccine became available shortly thereafter. Orimune is the trade name for the OPV vaccine manufactured by Lederle. Both vaccines aided in greatly reducing the incidence of polio in the United States.

Notwithstanding certain inherent risks, OPV became the vaccine of choice in the United States and most of the world for a number of reasons. First, because OPV is administered orally, commonly on a sugar cube, it is far easier to distribute than IPV which must be injected with a hypodermic needle. Second, the interaction of the live virus in OPV with the immunological system confers lifetime immunity. IPV, in contrast, requires periodic readministration in the form of "booster shots" to maintain immunity. Third, the oral administration of OPV stimulates production of antibodies in the gastrointestinal tract as well as in the bloodstream, thus producing bowel immunity which interrupts the method of transmitting the wild strain of the virus. Over time, the interruption of the virus' transmission path is expected to eradicate the wild strain. Finally, persons vaccinated with OPV shed vaccine viruses through feces and saliva to nonvaccinated persons, thereby conferring immunity on them as well.

To understand the risks inherent in OPV, it is necessary to comprehend the immunization process. The live but weakened viruses of OPV grow in the intestinal tract of the vaccinee. The growing viruses trigger the vaccinee's immune system to produce antibodies which render the vaccinee immune to the disease after 30 days. Rarely, but at a statistically predictable rate, the virus reproduced in the vaccinee's intestinal tract reverts to the virulent form. When this occurs, the vaccinee or persons coming in close contact with the vaccinee during the 30-day period may contract polio. Unvaccinated adults can take two precautions to avoid the risk of "contact polio": (i) alternative vaccination with IPV prior to contact with the vaccinee; and (ii) avoidance of contact with the vaccinee for one month, during which time live polio viruses

are being shed from the intestinal tract of the vaccinee via the saliva and feces.

In November 1979, Orimune was prescribed and administered to Plummer's infant granddaughter, Mavis Lyster, by Dr. Abby Cohen. Dr. Cohen did not convey any warnings to Mavis' mother. Plummer thereafter contracted a condition diagnosed as paralytic poliomyelitis. It is undisputed for the purposes of this appeal that Plummer had never been vaccinated and contracted polio through contact with his granddaughter.

In a deposition, Dr. Cohen stated that his education and training had informed him that there was a slight risk in administering OPV inasmuch as the vaccinee or those coming in contact with the vaccinee could potentially develop paralytic disease. His reading of professional journals confirmed that polio could be transmitted via "secretions from the mouth, but much more commonly by way of stool." Joint Appendix ("JA") 184. He described the risk of contact polio as "small," admitting that he "probably did not know [the statistics on its occurrence]." He also indicated he was aware that both the 1977 package insert for Orimune and articles in professional journals recommended that doctors warn patients concerning the risks of OPV. However, he expressed his view concerning the necessity of conveying warnings as follows:

My feeling ... was that there is an extremely minute percentage of people who will have the complications from the drug. I felt that, again, because I had never experienced [other practicing physicians] giving these warnings, it ... wasn't necessary for me to do it; and ... I felt ... that giving the warning ... could scare off parents from bringing children in for future vaccinations, which to me were much more important than the warning itself for the few number of people who are going to contract disease....

JA 182–83.

### The Warnings at Issue

■ Under established law, the sellers of dangerous products may be required to include on containers of these products directions or warnings as to their use. Restatement (Second) of Torts, § 402A comment j (1965). It is undisputed that certain types of drugs, such as polio vaccines, are dangerous. *Id.*, comment k. Therefore, in assessing the potential liability of prescription drug manufacturers, it is essential to review the informational inserts provided with the drugs.

The Orimune package insert describes in detail the risks of administering OPV. The "Adverse Reactions" section of the June 1979 package insert, the principal warning at issue here, states in pertinent part:

Paralytic disease following the ingestion of live poliovirus vaccines has been, on rare occasion, reported in individuals receiving the vaccine, as well as in persons who were in close contact with vaccinees. Most reports of paralytic disease following ingestion of the vaccine or contact with a recent vaccinee are based on epidemiological analysis and temporal association between vaccination or contact and the onset of symptoms. Most authorities believe that a causal relationship exists.

The Center for Disease Control reports [the number of doses distributed for certain years and the number of occurrences of contact polio and vaccine-associated polio]....

The risk is estimated to be one case in a recipient for every 20 million doses of vaccine distributed and one case in a contact for every 6 million doses distributed.

The risk of vaccine-associated paralysis is extremely small for vaccinees, susceptible family members and other close personal contacts. However, the responsible physician should convey or specifically direct personnel acting under his authority to convey the warnings to the vaccinee [or] parent ... of the possibility of vaccine-associated paralysis prior to administration of the vaccine. When the attenuated vaccine strains are to be introduced into a household with adults who have never been vaccinated, some

physicians may choose to give these adults at least two doses of IPV a month apart ... before the children receive ORIMUNE. The benefit of being protected against polio is believed to greatly outweigh any risk from polio vaccine.

Thus, the 1979 package insert advises that unvaccinated individuals may avoid the risk of contracting contact polio from Orimune vaccinees by receiving an IPV vaccination prior to contact.

The 1977 Orimune package insert[1] was also introduced into evidence and it varies from the 1979 insert by stating that "expert opinion is in agreement that the administration of [OPV] is generally an effective and safe method of protecting populations against the natural disease", and that "[t]he estimated risk of vaccine-induced paralytic disease occurring in vaccinees or those in close contact with vaccinees is extremely low." It did not give a breakdown of the estimated number of cases of contact polio, as the 1979 warning did. Also, it did not advise physicians to consider administering IPV to previously unvaccinated individuals who might come in contact with the Orimune vaccinee, as a precaution against contact polio. Rather, it merely stated that "parents of a vaccinee who have not had previous polio vaccination should probably be considered among those adults as subject to increased risk of exposure and in this special situation, in the judgement of the physician responsible, protection may be needed for these intimate contacts."

Dr. Darrell Salk, son of the doctor who discovered IPV, testified as an expert witness for the plaintiff. He stated that in his opinion Lederle's warnings inaccurately estimated the number of occurrences of contact polio per doses distributed as one in 6 million, and misleadingly failed to compare the risk of contracting contact polio relative to the risk of contracting wild polio. However, he admitted that Lederle's method of stating the risk is also used by most medical authorities in the United States, including the United States Public Health Service Advisory Committee on Immunization Practice (JA 298, 304; 314–19) and Centers for Disease Control (JA 334–35), the Committee on Infectious Diseases of the American Academy of Pediatrics (JA 308), and an Institute of Medicine Study of Poliovirus vaccines (JA 334–38).

The Centers for Disease Control provided the data in the 1979 insert stating the risk of contact polio per doses distributed. JA 334–336; Brief for Appellant, at 39. The insert was approved by the Bureau of Biologics (presently the Office of Biologics Research and Review) of the Food and Drug Administration in June, 1979, as required by 21 C.F.R. §§ 600–601 (1986).

### Procedural Rulings

Although Plummer's complaint originally alleged several theories of liability, the case did not proceed to trial on all of them. After the completion of discovery, Lederle moved for summary judgment on the grounds that (i) its warnings were adequate as a matter of law and (ii) there was

---

**1.** The "Adverse Reactions" section of the 1977 insert states in pertinent part:

Expert opinion is in agreement that the administration of live oral poliovirus vaccines is generally an effective and safe method of protecting populations against the natural disease. Paralytic disease following the ingestion of live poliovirus vaccines has been reported in individuals receiving the vaccine, and in some instances, in persons who were in close contact with subjects who had been given live oral poliovirus vaccine. The rare occurrence of "vaccine related cases" were considered "compatible" with vaccine induced disease where certain epidemiological criteria including certain incubation, clinical and laboratory values could be judged compatible with vaccine as a cause. It has been estimated that the risk of vaccine induced paralytic poliomyelitis is about one chance per million doses.

The estimated risk of vaccine-induced paralytic disease occurring in vaccinees or those in close contact with vaccinees is extremely low. However, the "risk" should be considered by the physician and such information should be conveyed to the parent(s) at the time of vaccination. Those parents of a vaccinee who have not had previous polio vaccination should probably be considered among those adults as subject to increased risk of exposure and in this special situation, in the judgement of the physician responsible, protection may be needed for these intimate contacts.

no proof that claimed inadequacies in the warnings proximately caused the injury because Dr. Cohen knew of the risks of contact polio but made a conscious decision not to convey any warning to the parents of the vaccinee. Plummer contended that the warnings were inadequate because they failed to recommend any precautions that could be taken to avoid the risk of contact polio, citing as examples (i) alternative administration of IPV to unvaccinated individuals prior to contact with the vaccinee, or (ii) avoiding contact with the vaccinee for one month.

The district court rendered an oral ruling denying Lederle's pre-trial motion for summary judgment but substantially narrowing the issues to be tried. In accordance with this ruling, the parties prepared a Joint Pre-Trial Order dated May 4, 1984 which reflected the district court's view that the only issues remaining to be tried, as a matter of law, were (i) whether Lederle had a duty adequately to advise the reasonable physician of precautions to be taken in connection with the prescription and administration of Orimune; (ii) whether Lederle satisfied such a duty; (iii) assuming that Lederle did not satisfy its duty, whether that failure was the proximate cause of plaintiff's damages.

The case proceeded to trial. The jury returned a verdict that Lederle was liable to Plummer for damages in the amount of $3.2 million, finding that the 1977 insert was inadequate because it did not include

general precautions or either of the two specified precautions for avoiding the risk and the 1979 insert was inadequate because it did not include general precautions or the second specified precaution, although it was adequate in recommending the first specified precaution, alternative administration of IPV. The jury further found that Lederle had used reasonable efforts in distributing the 1979 insert and that it had been received by Dr. Cohen. The jury concluded that Lederle's inadequate warnings were a proximate cause of plaintiff's injury and Dr. Cohen's failure to warn was not the sole cause of plaintiff's injury.[2]

Lederle moved for judgment notwithstanding the verdict or a new trial, contending that its warnings were adequate as a matter of law and that the charge on proximate causation was erroneous. The district court ordered a new trial limited to the issue of proximate cause, reasoning that the jury might have been misled by an erroneous supplemental instruction which failed to point out that the defendant could be exonerated not only by the doctor's negligence but also by the patient's contributory negligence. The judge ruled over Lederle's objection that it would allow Plummer to introduce evidence at the second trial concerning his theory that the package inserts "minimized the risk" of contact polio.

The second jury answered seven questions. In response to questions 1 and 2, the jury agreed that the defendant's pack-

---

**2.** The first jury was asked:

1. Do you find that the ... [1977 insert] ... failed to advise a reasonably prudent private physician that [an unimmunized adult should be given an IPV inoculation?]

2. Do you find that the ... [1977 insert] ... failed to advise that unimmunized adults should [avoid contact with OPV-vaccinated infant for one month]?

3. Do you find that the ... [1977 insert] ... failed to advise a reasonably prudent private physician of the necessary precautions to be taken to avoid contact with any individual immunized with [OPV]?

4. [Same as question (1), with respect to 1979 insert]

5. [Same as question (2), with respect to 1979 insert]

6. [Same as question (3), with respect to 1979 insert]

7. Do you find ... that the 1979 insert ... was disseminated in a reasonable manner to the medical profession prior to November 3, 1979?

8. Do you find ... that Dr. Cohen received the 1979 insert ... prior to November 3, 1979?

9. If the answer to any one of questions # 1 through # 6 is "Yes" do you find ... that the inadequacy of defendant's warning was a proximate cause of the plaintiff's injury?

10. Do you find ... that the plaintiff's injury was caused solely by the independent decision of Dr. Cohen to administer [OPV] to the plaintiff's grandchild without informing the plaintiff's daughter of the risks incident thereto and the precautions to be taken in that regard?

All of the questions except numbers 4 and 10 were answered affirmatively. JA 54–57.

age insert minimized the risk of contact polio and that this minimization influenced Dr. Cohen to not give any warnings. The remaining five questions asked whether each inadequacy of the inserts (as found by the first jury) was a legal cause of plaintiff's injury. All of these questions were answered affirmatively except question 7, to which the jury responded that the 1979 insert's failure to advise of general precautions was not a legal cause of plaintiff's injury.[3] The clerk entered a judgment in favor of plaintiff.

Lederle again moved for a new trial, on the ground that the second jury's answers to questions 6 and 7 were irreconcilably inconsistent. Lederle claimed that questions 6 and 7 were redundant, and therefore the jury could not simultaneously conclude: (i) that the 1979 insert was inadequate in failing to recommend as a specified precaution avoidance of contact with the vaccinee for one month (response to question 6) and (ii) that the insert adequately recommended general precautions (response to question 7). Lederle's motion was denied in an order dated July 24, 1986.

### DISCUSSION

■ A federal court sitting in diversity must follow the law directed by the Supreme Court of the state whose law is found to be applicable, and if there is no direct decision by the highest court of that state, the federal court should determine what it believes that state's highest court would find if the issue were before it. *See Meredith v. Winter Haven*, 320 U.S. 228, 234–37, 64 S.Ct. 7, 10–12, 88 L.Ed. 9 (1943). Plaintiff is a California resident, his granddaughter was inoculated with Orimune in California, and he developed polio in California, as well. Thus, New York's choice of law rules, which apply to this action by virtue of the holding in *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), dictate that California substantive law applies because that is the place where plaintiff's injury occurred. *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 795 (2d Cir.1986); *Wright v. Carter Prod., Inc.*, 244 F.2d 53, 56–57 (2d Cir. 1957).

### *Issue of the Adequacy of the Warnings*

■ It is undisputed that polio vaccines are inherently dangerous drugs. The seller of such a product may be required to give directions or warning as to use on the product's container. Restatement (Second) of Torts, § 402A comment j (1965).[4] Once

---

3. The second jury was asked:

 1. Do you find ... that the manner in which the defendant described the risk of vaccine associated contact polio in the package insert minimized that risk?

 2. If [yes to the above], did that description influence Dr. Cohen to not give any warnings?

 3. Do you find ... that the defendant's failure to advise [physician in 1977 insert] that a program of IPV inoculation for unimmunized adults should be considered was a legal cause of the plaintiff's injury?

 4. Do you find ... that the defendant's failure [to advise physician in 1977 insert] that unimmunized adults should not come in contact with [OPV-vaccinated infant] for approximately one month was a legal cause of plaintiff's injury?

 5. Do you find ... that the defendant's failure [to advise physician in 1977 insert] of the necessary precautions to be taken to avoid contact with [OPV-vaccinated infant] was a legal cause of plaintiff's injury?

 6. Same as question (4), with respect to 1979 insert.

 7. Same as question (5), with respect to 1979 insert.

 All of the questions except number 7 were answered affirmatively. JA 133–34.

4. Restatement (Second) of Torts, § 402A comment j, states:

 In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required.

the warning is given, there is a presumption that it will be read and heeded. *Id.* Comment k to § 402A of the Restatement (Second) of Torts acknowledges that vaccines may sometimes cause damaging consequences when injected, but that the diseases they are designed to combat also are terrible. The comment provides:

> [B]oth the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

 Thus, drug manufacturers are obligated by law to provide doctors and/or consumers with adequate knowledge of the hazards of the drugs they manufacture. If they do so, they are held not to a strict liability standard for the consequences attending the use of the product, but to a

negligence standard. *Brown v. Superior Court*, 182 Cal.App.3d 1125, 227 Cal.Rptr. 768 (1 Dist.), *petition for review granted*, 229 Cal.Rptr. 663, 723 P.2d 1248 (1986). In a negligence action, the adequacy of warnings is determined based on their "reasonableness." *Finn v. G.D. Searle & Co.*, 35 Cal.3d 691, 700, 200 Cal.Rptr. 870, 875, 677 P.2d 1147, 1152 (1984). If the drug is given under clinic-type conditions the manufacturer is obliged to warn consumers directly. In the case of prescription drugs dispensed by physicians, the obligation is to warn the physician. This "prescription drug rule" has been followed by the courts of California. *See Fogo v. Cutter Laboratories, Inc.*, 68 Cal.App.3d 744, 754, 137 Cal.Rptr. 417, 423 (1 Dist.1977); *Magee v. Wyeth Laboratories, Inc.*, 214 Cal.App.2d 340, 348, 29 Cal.Rptr. 322, 328 (2 Dist.1963). The rule was explained in *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974), as follows:

> Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.

498 F.2d at 1276.

The parties do not seriously dispute that in the present case we are considering Led-

---

But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated

fats, which may over a period of time have a deleterious effect upon the human heart.

Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

erle's duty to direct warnings to the prescribing physician and the medical profession in general, rather than to the patient. The parties' primary dispute is over the type of warnings required to be given to meet the manufacturer's duty under California law.

The second jury agreed with Plummer's claims that the warnings issued by Lederle regarding Orimune improperly (i) minimized the risk of contact polio and (ii) failed to specify precautions that could be taken to avoid these risks. On this appeal, we must determine whether the district court properly construed California law applicable to this action as allowing Lederle to be found liable to Plummer if inadequacies of this nature were present in Lederle's warnings. Lederle contends that such inadequacies are, as a matter of law, insufficient to support the jury's verdict.

■ With regard to the issue of alleged minimization of the risk in product warnings, the California authority most closely analogous to the instant case is *Kearl v. Lederle Laboratories*, 172 Cal.App.3d 812, 218 Cal.Rptr. 453 (1 Dist.1985). The facts underlying *Kearl* differ in only two ways from those in the present case: (i) contact polio was not involved (i.e., the vaccinee herself contracted the disease from the administration of Orimune); and (ii) the vaccine was administered in a clinic-type setting so the court was required to review manufacturer warnings transmitted directly to the patient, rather than through a "learned intermediary" such as a doctor. The claims regarding the adequacy of the warnings in *Kearl* are almost identical to those asserted by Plummer in the present case. The *Kearl* court noted that Lederle had warned the patient directly of the risk of contracting polio from the vaccine, and mentioned the alternative vaccine, IPV. The court concluded that this warning adequately informed plaintiff of the foreseeable risks. It rejected plaintiff's contention that the warning was inadequate for failing to state precisely the exact known risks of contracting polio from OPV relative to contracting it from wild polio viruses (i.e., without being vaccinated). The court concluded: "whatever duty a manufacturer may have to inform of risks associated with nonuse of a product, such a duty most certainly cannot be imposed when the relationship between use and nonuse is statistically close (and quite possibly immeasurable) and the probability of injury from either course is extremely remote." 172 Cal. App.3d at 835, 218 Cal.Rptr. at 468. The court held the warning to be adequate as a matter of law.

In the present case, we similarly hold that the warning was adequate as a matter of law. The first jury found that Lederle took reasonable efforts to disseminate the 1979 package insert to the medical profession. The 1979 insert contained statistics compiled by public health authorities estimating the number of cases of contact polio per doses of vaccine distributed. This method of stating the risk of contact polio is used not only by Lederle, but also by established medical authorities. Even assuming, as the second jury found, that the warnings did minimize the risk of contracting contact polio, the fact remains that the probability of contracting either contact polio or wild polio is extremely remote. The *Kearl* decision thus establishes that the verdict here cannot be supported by Plummer's theory that Lederle negligently minimized the risks of contracting contact polio in its package inserts.

Plummer further claims that the California Supreme Court has endorsed an approach that requires manufacturers of prescription drugs to give warnings of specific precautions that can be taken to avoid the hazards of its drug, citing *Finn, supra*. This contention is not supportable. *Finn* merely recognized in dictum that two types of warnings exist: those which instruct the consumer regarding use of a product and those which inform him regarding risks that may follow from use of a product. 35 Cal.3d at 699, 200 Cal.Rptr. at 875, 677 P.2d at 1152. Nowhere did the court state that a prescription drug manufacturer would be deemed negligent for failing to specify precautions in its package inserts. The California courts have not yet addressed the question of whether precau-

tions must be specified as a matter of law in prescription drug cases.

However, Lederle correctly points out that in *Dunn v. Lederle Laboratories,* 121 Mich.App. 73, 328 N.W.2d 576 (1982), a Michigan appellate court was presented with this same proposed theory of liability in a contact polio case and was asked to reverse judgment in favor of Lederle. The court refused to find a duty to warn of precautions to be taken in connection with prescribing Orimune. That court stated: "[c]onsidering the slight risk of contact polio, the variability of risks of harm (depending on many personal factors, including cleanliness and frequency and type of contact with a recently-vaccinated child), the introduction of individualized medical judgment, and ... other policy reasons ..., we do not accept plaintiffs' invitation to add new requirements to a manufacturer's duty to warn." 121 Mich.App. at 83, 328 N.W.2d at 581 (footnotes omitted).

In the present case, the judgment of the district court rests on the jury's finding that Lederle's warnings were legally inadequate because they failed to specify precautions for avoiding contact polio. We must determine what the California Supreme Court would decide if it were faced with this question. In the absence of any applicable California precedent in the prescription drug context based on a duty to specify precautions, we believe the California Supreme Court would not expand a manufacturer's duty and require that specified precautions be stated, especially where the warnings are being directed to a "learned intermediary" such as a doctor. In short, judgment notwithstanding the verdict should have been directed since there is no duty under California law to specify precautions in the prescription drug context.

### The Proximate Causation Issue

■ The second major issue on appeal relates to the proof of proximate cause. Lederle claims that Plummer failed to

make a showing sufficient to establish all the elements essential to his case, thus the motion for judgment notwithstanding the verdict should have been granted. *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In particular, Lederle claims Plummer did not prove that inadequacy of the warnings was the proximate cause of his injury, since the testimony established that Dr. Cohen was aware of the risks of contact polio but as a matter of practice, did not convey these warnings to the parents of the patient. Lederle claims that the verdict must be set aside because of this failure of proof of proximate causation.

Plummer responds by arguing that the jury was entitled to discredit Dr. Cohen's testimony and reach its own conclusion on proximate cause. Presumably, Plummer contends that the jury's conclusions in response to the question on minimization of the risk, i.e., that Dr. Cohen was prompted not to warn the patients based on the inadequacies in the warnings to state the true risk, is the substitute for a finding on proximate cause. In support, plaintiff cites *Stevens v. Parke, Davis & Co.,* 9 Cal.3d 51, 107 Cal.Rptr. 45, 507 P.2d 653 (1973), a case which imposed liability on a drug manufacturer because its overpromotion of a dangerous drug to the medical profession was coupled with a gross minimization of the risk of prescribing the drug in the product warnings.

*Stevens* is distinguishable because in the present case there is no evidence that Lederle overpromoted Orimune, nor is there proof that Lederle grossly minimized the risk. At best, Lederle understated a small risk to make it appear even smaller. Furthermore, as Lederle notes, the plaintiff failed to prove that a proper warning would have altered the doctor's conduct.[5] Dr. Cohen testified that he knew of the information plaintiff claimed should have been in the insert—that an unimmunized person should avoid contact with the vaccinee for 30 days—but still did not warn

---

5. There is no claim or evidence that defendant had knowledge of Dr. Cohen's practice not to warn, or of such practice by other physicians.

Plummer's daughter. As the California intermediate appellate court has stated, "no harm could have been caused by failure to warn of a risk already known." *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal. App.3d 726, 730, 226 Cal.Rptr. 299, 305 (1 Dist.1986).

According to Plummer, Dr. Cohen's testimony that he had a practice of failing to warn his patients of the risk of contact polio should not be credited because he was an interested witness. It may be true that Dr. Cohen was an interested witness, but his was the only testimony on the issue of proximate cause. Even if the jury failed to credit him, Plummer has not proven an essential element of his case. Furthermore, even if the warnings had been stronger, a reasonable jury could not have concluded that Dr. Cohen would have warned the vaccinee's mother. Thus, judgment notwithstanding the verdict should be entered for Lederle because a reasonable jury could not have found proximate cause. *See Dunn*, 121 Mich.App. at 85, 328 N.W.2d at 582; *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 646 (4th Cir.1981) (doctor testified he knew of risk but had practice of not informing patients about it); *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 92 (2d Cir.1980) ("no one needs notice of that which he already knows").

## CONCLUSION

On Lederle's appeal, we vacate the judgment of the district court and remand for entry of judgment notwithstanding the verdict. Thus, it is not necessary to address Lederle's claims that various evidentiary rulings and instructions to the jury were erroneous, and that the second jury's answers to certain questions were inconsistent.

In view of our decision that judgment notwithstanding the verdict should be granted, Plummer's cross-appeal is denied in all respects.