**Daniel Clinton WOULFE, Personal Representative of the Estate of Jack Wayne Woulfe, Deceased, Plaintiff,**

v.

**ELI LILLY & CO., Defendant.**

No. 93–37–S.

United States District Court,
E.D. Oklahoma.

April 9, 1997.

Eddie Harper & Tim Maxcey, McAlester, OK, Arnold Anderson Vickery & Richard W. Ewing, Houston, TX, for Plaintiff.

Clifford K. Cate, Jr., Muskogee, OK, Phillip G. Whaley, Charles E. Geister, III, Oklahoma City, OK, Joe C. Freeman, Jr., Lawrence J. Myers, Atlanta, GA, Michelle Mangrum, Andrew See, Kansas City, MO, for Defendant.

## ORDER

SEAY, District Judge.

This is a manufacturer's products liability action brought by Plaintiff Daniel Clinton Woulfe against Defendant Eli Lilly & Co. ("Lilly") to recover damages for the wrongful death of Jack Wayne Woulfe ("Woulfe"). Plaintiff is Woulfe's son and the duly appointed personal representative of Woulfe's estate. Plaintiff brings this action against Lilly, the manufacturer of the prescription antidepressant medication, Prozac, claiming Lilly's failure to warn about the risks of suicide involved with Prozac caused or contributed to Woulfe's death and suffering.[1] In particular, Plaintiff claims the warning provided in the package insert for Prozac sold in the United States was deficient when compared to the language used in the package insert for the German market which advised prescribing physicians that (1) Prozac[2] does not have a general sedative effect on the central nervous system, (2) for their own safety, patients had to be sufficiently observed until the antidepressive effect of Prozac set in and, (3) in some cases, the use of an additional sedative may be necessary. Because these warnings were not included in the packaging of Prozac in the United States, Plaintiff contends Lilly is liable in damages for the death of Woulfe under a failure to warn theory.

Currently before the court for its consideration are the parties' respective motions for summary judgment with respect to the failure to warn claim. Having fully reviewed the briefs and the voluminous record which has accumulated to date, the court concludes Lilly is entitled to the entry of summary judgment in its favor on Plaintiff's failure to warn claim for the reason that Plaintiff has failed to establish that the proximate cause of Woulfe's death and suffering was Lilly's failure to warn Woulfe's prescribing physician of the potential risks associated with the use of Prozac.

## I.

A party moving for summary judgment under Rule 56 of the Federal Rules of Civil

---

1. Plaintiff's cause of action in this case is based on a failure to warn theory under the Restatement (Second) of Torts § 402A comments j and k (1965). Plaintiff has withdrawn any other claims which may have been asserted based on implied warranty or manufacturing and design defects. See Plaintiff's Brief in Support of Response to Lilly's Motion for Summary Judgment on Strict Liability and Implied Warranty Claims.

2. Prozac is Lilly's trade name in the United States for the chemical compound fluoxetine hydrochloride. In Germany, the trade name for such compound is Fluctin.

Procedure must show the absence of evidence to support the opposing party's case. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A moving party must identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which establish the absence of any genuine issue of material fact. *Universal Money Centers v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994) (quoting Fed.R.Civ.P. 56(c)). The proponent of a summary judgment motion need not negate its opponent's claim or his evidence, but rather, its burden is to show that there is no evidence in the record to support the claim. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54. The non-moving party must go beyond the pleadings and "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir.1990).

Summary judgment is not appropriate if there exists a genuine material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). "A fact is 'material' only if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thomas v. IBM*, 48 F.3d 478, 486 (10th Cir. 1995) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). In this regard, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the summary judgment motion. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. With these standards in mind, the court turns to the merits of the parties' motions.

## II.

On February 1, 1991, Woulfe committed suicide by hanging. For some time prior to that date Woulfe had been experiencing severe depression. Several events in Woulfe's life led to the onset of this depression. In 1987, Woulfe sustained severe head and facial injuries when a tire blew up in his face. Woulfe's vision was impaired as result of this incident and he was left permanently disfigured and disabled. Thereafter, Woulfe's wife, Sharon (Woulfe) Nichols ("Nichols"), became increasingly disinterested in Woulfe and she ultimately began a romantic relationship with another man. The deterioration of the marriage relationship eventually resulted in Nichols filing for divorce in September 1990. After a brief attempt at reconciliation, Nichols persisted in her desire to seek a divorce. In addition to his difficulties at home, Woulfe was also experiencing troubles at work. Woulfe was employed as a truck driver and in August 1990, he was involved in an on-the-job accident. As a result of this accident, Woulfe believed his job, as well as any future employment, were in jeopardy.

Confronted with these problems, Woulfe went to see Dr. Mark Newey ("Newey") of Healdton, Oklahoma, on January 4, 1991, for treatment related to his depression. Newey had known Woulfe for many years and Woulfe had been a patient of Newey's since 1985. During his January 4, 1991, visit, Woulfe told Newey about his marital problems and informed Newey he was depressed and needed help in dealing with this depression. Woulfe began to cry when he discussed his marital problems with Newey. He did not, however, exhibit "any symptoms of anger, anxiety, impulsivity, agitated ruminating or volatile outbursts" during this visit. Newey Affidavit, ¶4. Woulfe also denied thoughts of suicide. *Id.* During the course of Woulfe's office visit on January 4, 1991, Newey prescribed Prozac for the treatment of Woulfe's depression. The prescription was for thirty 20mg Prozac pulvules, with three refills, with directions for Woulfe to take one pulvule each day. *Id.* at ¶5. Newey told Woulfe to return for another appointment in ten to fourteen days; however, Woulfe did not return for that appointment and Newey never saw Woulfe again. *Id.* at ¶13. Newey

states that no one, including Woulfe, ever told him that Woulfe was experiencing problems with Prozac. *Id.*

In his affidavit, Newey offers the following salient details in connection Lilly's alleged failure to warn of the potential risks associated with the use of Prozac and his treatment of Woulfe:

> I believe the warnings Lilly provided me about Prozac's potential risks were adequate. A warning by Lilly that depressed patients need prompt measures beyond Prozac to control any existing agitation and impulsivity would not have changed my decision to prescribe Prozac for Jack Woulfe for two primary reasons. First, during my assessment of Jack Woulfe on January 4, 1991, Mr. Woulfe did not give a history, or exhibit signs of symptoms, or anger, anxiety, agitation, impulsivity, agitated ruminating or volatile outbursts such to warrant additional treatment or additional prescription medication other than Prozac. Second, as a physician in 1991, I was aware that Prozac is not a sedating antidepressant. Had I determined that Jack Woulfe was angry, anxious, agitated, impulsive or exhibiting agitated ruminating or volatile outbursts when he came to my office on January 4, 1991, my education, experience and training would have lead me to (1) prescribe additional medication, as appropriate, for those symptoms until the antidepressant effect of the medication lessened those symptoms; or (2) refer Mr. Woulfe to a psychiatrist for the treatment of his illness. Similarly, if I had seen Jack Woulfe after January 4, 1991 and noted the emergence of anger, anxiety, agitation, impulsivity, agitated ruminating or volatile outbursts, my education, experience and training would have lead me to (1) prescribe additional medication for those symptoms until the antidepressant effect of the medication lessened those symptoms; or (2) refer Mr. Woulfe to a psychiatrist for the treatment of his illness.

Newey Affidavit, ¶ 18. Newey also states in his affidavit that when he prescribed Prozac for Woulfe in 1991, he was aware the possibility of a suicide attempt was inherent in depression, *id.* at ¶ 17; that he was aware of reports of suicide temporally associated with the ingestion of Prozac, *id.* at ¶ 10; that he was aware of the information Lilly provided about Prozac in the 1990 Physician's Desk Reference ("PDR")[3], *id.* at 9; that he believes Prozac is a safe and effective medication for the treatment of depression, *id.* at 16; and that, in retrospect, under the same facts and circumstances known to him on January 4, 1991, he would again prescribe Prozac for Woulfe, *id.* at 17. Finally, with respect to the warning given German physicians[4], Newey states he "would have prescribed Prozac for Jack Woulfe on January 4, 1991, even if Lilly's package insert for Prozac in the United States contained the precise language set forth in the 'Information for Use' for Fluctin." *Id.* at ¶ 20.

### III.

Lilly contends Plaintiff's failure to warn claim must fail because Plaintiff cannot establish Lilly's alleged failure to warn Newey as the proximate cause of Woulfe's suicide. In this respect, Lilly relies almost exclusively on the above referenced portions of Newey's

---

**3.** The 1990 PDR contained the following under the "precautions" section for Prozac:

> **suicide**—the possibility of a suicide attempt is inherent in depression and may persist until significant remission occurs. Close supervision of high-risk patients should accompany initial drug therapy. Prescriptions for Prozac should be written for the smallest quantity of capsules consistent with good patient management, in order to reduce the risk of overdose.

This PDR language is identical to the packaging insert language used by Lilly in connection with its sale of Prozac in the United States. *See* Testimony of Dr. Leigh Thompson (page 125, lines 11–22) in *Fentress v. Shea Communications*, 90–CI–06033 (Jefferson Circuit Court, Kentucky)

(attached as Exhibit No. 3 to Plaintiff's Brief in Support of Motion for Partial Summary Judgment).

**4.** The package insert for the German version of Prozac contained the following "Information for Use" wording:

> Risk of Suicide: FLUCTIN does not have general sedative effect on the central nervous system. Therefore, for his/her own safety, the patient must be sufficiently observed, until the antidepressant effect of FLUCTIN sets in. Taking an additional sedative may be necessary. This also applies in cases of extreme sleep disturbances and excitability.

affidavit wherein Newey states he was fully informed about the potential risks associated with the use of Prozac at the time he prescribed it for Woulfe and, that even if Lilly had provided him with the information contained in the German warning, he still would have prescribed Prozac for Woulfe.

In response, and in support of his own motion for partial summary judgment on the issue of liability, Plaintiff contends Lilly's reliance on Newey's affidavit is misplaced. Plaintiff argues that under Oklahoma law, where a manufacturer sells a product without a required warning, a rebuttable presumption arises that the warning would have been read and heeded. Furthermore, Plaintiff contends the test for rebutting this presumption is an objective one: in light of all the circumstances existing on the date Woulfe took Prozac, would a reasonably prudent physician have prescribed Prozac. Thus, Plaintiff argues that not only is Lilly not entitled to summary judgment in its favor, but that he is entitled to partial summary judgment on the issue of liability because Lilly has not come forward with any objective evidence to overcome the presumption that an adequate warning—the German warning which required continuous monitoring and suggested additional sedative therapy—would have been heeded. According to Plaintiff, Lilly's use of Newey's affidavit is an improper attempt to interject a subjective standard for the evaluation of the rebuttable presumption which arises under Oklahoma law.

■ Under Oklahoma's manufacturer's products liability law, a manufacturer is held accountable to a party for a defective product when it is established that (1) the product was the cause of the injury, (2) the defect existed in the product at the time it left the manufacturer's control, and (3) the defect made the product unreasonably dangerous. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okla.1974). A failure to warn of a known potential risk renders a product defective, but it must be established that the failure to warn caused the injury. *Daniel v.*

*Ben E. Keith Co.*, 97 F.3d 1329, 1332 (10th Cir.1996).

■ Oklahoma law generally requires that a manufacturer warn consumers of the dangers associated with its products to the extent the manufacturer knew or should have known of such dangers. *Edwards v. Basel Pharmaceuticals*, 933 P.2d 298, 300 (Okla. 1997) and *McKee v. Moore*, 648 P.2d 21, 23 (Okla.1982). It is admitted by Plaintiff, however, that in the context of this prescription drug case, Lilly had no duty to warn Woulfe, personally, of the possible risks associated with the use of Prozac. Plaintiff recognizes Oklahoma's application of the "learned intermediary doctrine" in the context of prescription drug cases. *Edwards*, 933 P.2d at 300; *McKee*, 648 P.2d at 24; *Cunningham v. Charles Pfizer & Co.*, 532 P.2d 1377, 1381 (Okla.1974). Under this doctrine the manufacturer of a prescription drug is shielded from liability if it adequately warns prescribing physicians of the dangers associated with the drug. "The reasoning behind this rule is that the doctor acts as a learned intermediary between the patient and the prescription drug manufacturer by assessing the medical risks in light of the patient's needs." *Edwards*, 933 P.2d at 300 (citing *Cunningham*, 532 P.2d at 1381). Thus, in this case, Lilly's only duty was to adequately warn Newey, Woulfe's treating physician, of the potential risks associated with the use of Prozac.

■ Focusing on its duty to warn Newey, Lilly contends Plaintiff cannot establish the alleged failure to warn[5] as the proximate cause of Woulfe's death and suffering. Relying on Newey's affidavit, Lilly states proximate cause is lacking because Newey already knew of the potential risks associated with Prozac when he treated Woulfe and he has stated he would have prescribed Prozac even if he had been provided with the information contained within the German warning. As noted previously, Plaintiff discounts the relevance and import of Newey's affidavit in evaluating the issue of proximate cause. Thus, the central issue in this case involves

---

**5.** For purposes of this motion, the court assumes, without deciding, that Lilly's warning to physi-

cians in the United States was inadequate.

an assessment of Newey's affidavit in connection with Plaintiff's burden of establishing his manufacturer's products liability claim against Lilly.

■ Oklahoma case law embraces a rebuttable presumption in favor of Plaintiff that an adequate warning would have been read and heeded.[6] The Oklahoma Supreme Court has noted:

> Where a consumer, whose injury the manufacturer should have reasonably foreseen, is injured by a product sold without a required warning, a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks.

*Cunningham*, 532 P.2d at 1382 (quoting *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974)). This presumption discussed in *Cunningham* in the context of "consumers" applies equally to the situation of "learned intermediaries" such as Newey. Absent evidence by Lilly rebutting this presumption, Plaintiff need not present any direct evidence that Newey would have acted differently had a proper warning been given. "But once (Lilly) meets its burden to come forward with evidence rebutting the presumption, the presumption disappears." *Daniel*, 97 F.3d at 1332–33. The questions to be resolved, therefore, are whether Lilly has sufficiently rebutted this presumption through the presentation of Newey's affidavit and, if so, whether Plaintiff has come forward with evidence sufficient to submit the case to a jury to determine if Lilly's alleged inadequate warning caused Woulfe's death and suffering.

Whether a party against whom this presumption operates in a "learned intermediary" case can rebut the presumption through the introduction of the affidavit or testimony of the treating physician has not been addressed under Oklahoma case law. Two cases, however, are instructive.

In *Cunningham*, the plaintiff, a fifteen-year-old boy, ingested an oral polio vaccine on January 20, 1963, as part of a mass immunization program sponsored by the Tulsa County Medical Society and the Tulsa City–County Health Department. No warnings were provided to either plaintiff or his parents regarding the possible adverse effects associated with the vaccine. Some five weeks after taking the vaccine, plaintiff contracted a paralytic disease. In assessing plaintiff's failure to warn claim brought against the producers of the vaccine, the Oklahoma Supreme Court determined the general rule ("learned intermediary doctrine") requiring manufacturers to only warn prescribing physicians in cases involving prescription drugs does not apply to situations involving mass immunization programs where "the evidence does not indicate the doctor present at each center assessed medical risks in light of his knowledge of each patient's needs and susceptibilities." *Cunningham*, 532 P.2d at 1381. The manufacturer in *Cunningham*, therefore, had a duty to directly warn the individuals receiving the vaccine. The Supreme Court recognized the existence of the rebuttable presumption in favor of plaintiff to the effect that he would have heeded any warning which might have been given. The Supreme Court also found, however, that this presumption had been successfully rebutted through evidence establishing there "was considerable risk of contracting polio from natural sources, there had been 12 cases of polio in Tulsa during October and November 1962, and Oklahoma was an epidemic state prior to 1963." *Id.* at 1382. Given this successful rebuttal, the Supreme Court determined it was for the jury to decide if plaintiff would have refused the vaccine if he had been adequately warned. In making this determination, the test to be applied by the jury is an objective: "in light of all circumstances existing on the date plaintiff took the vaccine, would a reasonably prudent person in plaintiff's position have refused the vaccine if adequate warning of risks had been given." *Id.*

---

**6.** This presumption has its roots in the Restatement (Second) of Torts, § 402A, comment j: "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

In *Daniel*, a former restaurant worker brought a failure to warn claim against the manufacturer of "Keith's All–Purpose Bleach" after she was exposed to chlorine gas when a co-worker mistakenly used the bleach to clean deep fat fryers. After the jury returned a defense verdict, plaintiff appealed and claimed various errors by the trial court. One of the issues presented by plaintiff's appeal was her contention the trial court erred in failing to give a "heeding presumption" instruction. The Tenth Circuit recognized the existence under Oklahoma law of a presumption that an adequate warning would have been read and heeded. The Tenth Circuit held, however, that the trial court was correct in failing to give the requested heeding presumption instruction since the manufacturer had sufficiently rebutted the presumption. The evidence offered by the manufacturer to rebut the presumption consisted of the co-worker's testimony that a different warning on the bleach container would not have made a difference since he was in a hurry that morning and did not look at the label. The co-worker testified he had been trained to use fryer cleaner, but had mistakenly used the bleach. Based on this testimony, the Tenth Circuit concluded a different warning may not have altered the co-worker's action and, therefore, "any presumption that a different warning would have been heeded disappeared, and plaintiffs continued to carry the burden of proving that the allegedly inadequate warning caused her injury." *Id.* at 1333.

Plaintiff relies primarily on the objective test language of *Cunningham* and contends Newey's affidavit has no relevance because it does not tend to establish what a reasonable doctor would have done under the existing circumstances. It is Plaintiff's contention that Newey's affidavit should be disregarded since it is obviously not an "objective" assessment of action to be taken, but rather, it is a "subjective" assessment of what Newey would have done had a proper warning been given. Under Plaintiff's construction, the court is required to take the rather curious action of ignoring what the treating physician says he would have done given a certain factual setting for no other reason than the fact that he is not an "objective" physician, i.e., any physician other than the actual physician who diagnosed, treated, and prescribed medication to the patient. Rather than determining what the actual treating physician would have done, the court is told to determine what an "objective" physician would have done. The court does not believe this construction of the rebuttable presumption is supported by Oklahoma case law.

Nothing in *Cunningham* supports the proposition that the court cannot look to the treating physician's own affidavit or testimony in evaluating the presumption that a different warning would have been heeded. Initially, it should be noted that *Cunningham* does not involve a "learned intermediary" such as exists in this case; consequently, the warning in *Cunningham* was to be directed towards the consumer. Moreover, in *Cunningham*, the presumption that the plaintiff or his parents would have heeded a warning and not taken the vaccine was rebutted with evidence concerning the risk of contracting polio from natural causes and with incidents of polio in the local area during the relevant time frame. It was only after this presumption was rebutted did the Oklahoma Supreme Court state that the test would be an objective one for evaluating whether the plaintiff would have refused to take the vaccine. No attempt was made by the *Cunningham* court, however, to restrict the type of evidence solicited in connection with the manufacturer's burden of rebutting the original presumption. Clearly, the court's concern in *Cunningham* focused on the stage of litigation after the presumption disappears and the ultimate question of whether the plaintiff/consumer would have refused to take the vaccine. In this connection, the *Cunningham* court set the test as on objective one in order to discount the obvious self-serving testimony plaintiffs would likely give in response to questions about whether they would have heeded an adequate warning. *See Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal. Rptr. 505, 515, 502 P.2d 1, 11 (1972) and *Reyes*, 498 F.2d at 1281.

Plaintiff also relies on *Daniel* in attacking the relevance of Newey's affidavit. *Daniel*, like *Cunningham*, is not a "learned interme-

diary" case. In *Daniel*, the Tenth Circuit held the presumption was rebutted with evidence from the actual co-worker who used the bleach which caused plaintiff's injuries. There was no requirement imposed by the Tenth Circuit that the manufacturer come forward with evidence from an "objective co-worker" or "objective individual" in order to rebut the presumption. Instead, the Tenth Circuit approved of the use of testimony from the person who was supposed to heed the warning.

■ Having the benefit of the constructions given the heeding presumption by the courts in *Cunningham* and *Daniel*, this court concludes it is entirely proper in the context of a "learned intermediary" case to consider the affidavit or testimony of the actual treating physician in determining whether a manufacturer of a particular prescription drug has overcome the presumption that the treating physician would have heeded a proper warning and not prescribed the drug in question. The court rejects any contention that such evidence is not relevant because the source is the actual treating physician and not an otherwise "objective physician." This construction is consistent with decisions of other courts which have considered a treating physician's knowledge of the potential side effects of a particular medication at the time it was prescribed and the physician's testimony that additional information from the drug manufacturer would not have changed the prescription decision. *See Plummer v. Lederle Laboratories*, 819 F.2d 349, 358–59 (2d Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (in polio vaccine case plaintiff failed to prove inadequacy of the warnings was the proximate cause of the injury where the doctor who administered the vaccine was aware of risks of contact polio, but he testified he had a practice of failing to warn patients of such risks); *Kirsch v. Picker Intern., Inc.*, 753 F.2d 670, 671–73 (8th Cir.1985) (manufacturer's failure to warn of potential risks associated with radiation therapy for the treatment of acne was not the proximate cause of plaintiff's injuries where treating physician was aware of the risks); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003–04 (4th Cir.1992) (summary judgment appropriate where physician testified a different warning, one advising physicians not to prescribe an intrauterine device to women who might later want children, would not have changed his decision to prescribe the device); *Willett v. Baxter Intern. Inc.*, 929 F.2d 1094, 1098–99 (5th Cir.1991) (alleged failure to warn of less than one percent increase in the risks associated with heart valve replacement was not the proximate cause of plaintiff's fear of future heart valve failure where the only reasonable conclusion is that an adequate warning would not have affected the physician's decision to proceed with the surgery). The weight to be afforded such affidavit or testimony, however, depends on the substance of the evidence as well as the credibility and reliability of the treating physician himself.

In the instant case, Plaintiff has offered absolutely nothing to call into question either the substance of Newey's affidavit or his credibility with respect to the statements he makes. Newey's observations of Woulfe on January 4, 1991, are not disputed. The record firmly establishes that no information was imparted to Newey, either through his own evaluation of Woulfe or through independent sources, suggesting Woulfe was exhibiting signs of anger, anxiety, agitation, impulsivity, agitated ruminating or volatile outbursts. In sum, Woulfe's depression was evident to Newey, but signs of aggressive behavior or suicidal ideation were not.[7]

Plaintiff has likewise wholly failed to present anything regarding Newey's credibility which would tend to call into question the statements he makes in his affidavit concerning his treatment of Woulfe, his knowledge of the problems associated with the use of Prozac, and the fact that he would have prescribed Prozac even if the information from

---

**7.** Plaintiff suggests this knowledge of suicidal ideation on the part of Woulfe has been judicially admitted by Lilly in other pleadings on file with the court where it asserts Woulfe "was a person at high risk for suicide." Lilly's Motion for Summary Judgment on Causation, p. 3, ¶ 5. What Lilly has or has not admitted in this context, however, is not the relevant inquiry. The issue for purposes of this proximate cause analysis is what Newey knew and observed with respect to Woulfe's condition when Woulfe presented himself on January 4, 1991.

the German package insert had been available to him. Plaintiff's feeble attempt to attack Newey's credibility regarding his affidavit statements consists of two unsupported statements: (1) "Lilly has Dr. Newey in its pocket in this case" and (2) "[Newey's] affidavit to that effect [that he would have ignored the warning] is inconsistent with his deposition testimony."

In support of his contention that Lilly has Newey "in its pocket," Plaintiff references Newey's affidavit submitted by Lilly in support of this motion. The court is at a loss to determine how Newey's own affidavit supports a claim that he is in Lilly's pocket. Plaintiff seems to be making the argument that any affidavit or testimony submitted by a witness in support of a party's defense is inherently suspect and subject to a finding that the witness is controlled by that party. The court will not countenance such implausible reasoning. Absent admissible evidence tending to establish that Newey was, in fact, influenced, persuaded, cajoled, or otherwise provided with an incentive by Lilly to submit his affidavit, the court finds no reason to question either his credibility or the veracity of the statements contained therein.

Plaintiff also suggests Newey's affidavit is inconsistent with his deposition testimony regarding whether he would have prescribed Prozac for Woulfe even if he had been provided with the information in the German warning. Again, Plaintiff cites nothing to support this statement and, more incredibly, fails to point the court to any deposition testimony by Newey which substantiates this claim. In fact, the only deposition testimony of Newey provided is that presented by Lilly in connection with its motion. Having reviewed such testimony, the court finds nothing which supports Plaintiff's statement that Newey has changed his position.

## IV.

Having failed to controvert Newey's affidavit in any respect, Plaintiff has failed to carry his burden of establishing that Prozac would not have been prescribed for Woulfe had the German warning been provided as part of the package insert. Consequently, Lilly is entitled to summary judgment in its favor for the reason that Plaintiff cannot establish that Lilly's alleged failure to warn was the proximate cause of Woulfe's death.

Based on the foregoing reasons, Lilly's motion for summary judgment on Plaintiff's failure to warn claim is granted and this action is, in all respects, dismissed.