**Judith E. PUMPHREY, Plaintiff,**

v.

**C.R. BARD, INC., Defendant.**

**Civ. A. No. 1:94–CV–138.**

United States District Court,
N.D. West Virginia.

Nov. 30, 1995.

Stephen A. Wickland, Clarksburg, WV, for Plaintiffs.

Gary W. Hart, William D. Esbenshade, Jackson & Kelly, Charleston, WV, for Defendants C.R. Bard, Inc. and Bard Access Systems, Inc.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This is a civil action for damages against the manufacturer of a Hickman Subcutaneous Port, a medical device for repeated delivery of drugs to the blood system of a patient. The plaintiff alleges that the manufacturer failed to adequately warn her of the danger of "pinch-off syndrome," in which part of the "port" or the attached catheter breaks off and becomes lodged elsewhere in the body. The defendant manufacturer has moved for summary judgment on the grounds that under the "learned intermediary doctrine," a manufacturer has no duty to warn a patient of complications associated with a prescription medical device. The issue has been fully briefed and is ready for decision. For the reasons stated below, the Court GRANTS the motion for summary judgment.

### I.

The plaintiff Judith Pumphrey ("Pumphrey") suffered from cancer of the left breast for which she underwent a mastectomy. Because of multiple positive lymph nodes, she was required to receive a full course of chemotherapy for which the venous access portal was inserted on November 25, 1991. An x-ray taken the next day, November 26, 1991, revealed that the catheter was somewhat kinked at the level of the first right rib but was intact.[1] Mrs. Pumphrey completed her course of chemotherapy, without incident, in April, 1992 but the port was not immediately removed in case additional chemotherapy was needed.

On June 29, 1992, Mrs. Pumphrey went to the hospital to have the port flushed, which turned out to be difficult. On the next appointment, November 4, 1992, the port could not be flushed at all. Chest x-rays and a mammogram revealed that the port had separated and 15 centimeters of the catheter lodged in Mrs. Pumphrey's heart. On November 12, 1992, the surgeon, Dr. Roger King, removed the port but allowed the 15 cm of the catheter to remain in the heart

since there was no evidence of interference with heart function and the segment appeared to be stable. It remains in Mrs. Pumphrey's heart to this day.

On November 13, 1994, the plaintiff filed this products liability action, asserting that the port was defective and that the defendant had failed to properly warn her of the danger of "pinch-off" syndrome, under theories of strict liability, negligence, gross negligence and breach of warranty. After some discovery, the plaintiff dropped all of her causes of action except as they related to proper warnings.

### II.

Summary judgment is appropriate only if there are no genuine issues of material fact. *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir.1979). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. *Id.*

The burden then shifts to the party opposing the motion. The adverse party may not rest upon mere allegations or denials, *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, and summary judgment is appropriate if the adverse party fails to show, under Rule 56, the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. A mere scintilla of evidence supporting the case is insufficient. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. With regard to the burden on the adverse party, Rule 56(e) provides in part that

[w]hen a motion for summary judgment is made and supported as provided in this

---

1. The actual report of this x-ray was not submitted to the Court as an exhibit, as were other x-ray reports. However, the plaintiff did not contest this factual statement in her brief.

rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The adverse party is, however, entitled to have all reasonable inferences and questions of law resolved in his favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

### III.

The defendant here does not deny that it had a duty to warn about the dangers of "pinch-off" syndrome involved with the use of the port and catheter. It acknowledges the medical literature from as early as 1984 indicating that venous access devices such as the port and catheter could become compressed between the clavicle and first rib when the catheter entered the costoclavicular space medial to the subclavian vein. *See e.g.* Aitken, et al., *The "Pinch–Off Sign": A Warning of Impending Problems with Permanent Subclavian Catheters, Am.J.Surg.,* 148 (Nov. 1984).

The defendant also has provided the affidavit of Dr. Jesse Jones, Medical Director for defendant Bard Access Systems ("Bard"), which describes the instructions and warnings given on the packaging for both the Percutaneous Introducer Kit and the Hickman Subcutaneous Port. These instructions, which contain sections named PRECAUTIONS, POSSIBLE COMPLICATIONS and INSTRUCTIONS FOR USE that reference the possibility of compression or pinching off of the catheter if it is inserted into the subclavian vein medially, were also attached to the motion for summary judgment as an exhibit and are noteworthy for the detail, repetitiveness, and large block letters used to highlight the warnings.

This information on or with the package containing the sterile ports, however, was seen only by the physician and other medical personnel. The information booklet given to the patient contains none of these warnings or precautions, and is noteworthy for its tone of reassurance, although it does refer patients to their doctors and nurses as their "best sources of information."

There is no doubt here that the manufacturer's warning to the physicians was adequate. The question is whether the warnings also should have been placed in the patient's booklet.

■ The rule on which the defendant relies, the learned intermediary doctrine, is nearly universal: where drugs or medical devices are only available to the public by prescription from a physician or dentist, the products manufacturer fulfills its duty to warn by advising the professional of the dangers of the product and has no duty to warn the patient. *See e.g., Odom v. G.D. Searle & Co.,* 979 F.2d 1001 (4th Cir.1992) (applying South Carolina law); *Phelps v. Sherwood Med. Indus.,* 836 F.2d 296 (7th Cir.1987) (applying Indiana law); *Kirsch v. Picker Int'l, Inc.,* 753 F.2d 670 (8th Cir.1985) (applying Missouri law); *Timm v. Upjohn Co.,* 624 F.2d 536 (5th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981) (applying Louisiana law); *Reyes v. Wyeth Labs, Inc.,* 498 F.2d 1264 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974) (applying Texas law); *Sterling Drug, Inc. v. Cornish,* 370 F.2d 82 (8th Cir.1966) (applying Missouri law); *Lee v. Baxter Healthcare Corp.,* 721 F.Supp. 89 (D.Md.1989); *Rohrbough v. Wyeth Laboratories, Inc.,* 719 F.Supp. 470 (N.D.W.Va.1989), *aff'd* 916 F.2d 970 (4th Cir.1990) (relying on Fourth Circuit precedent without reference to West Virginia law); *Odgers v. Ortho Pharmaceutical,* 609 F.Supp. 867 (E.D.Mich.1985).

■ Only two narrow and specific exceptions have been carved into the "learned intermediary doctrine." The first is for polio and other vaccines administered in public, mass clinics, where a physician was not involved in individual vaccinations. *See Plummer v. Lederle Laboratories,* 819 F.2d 349 (2d Cir.1987), *cert. denied,* 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987); and *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir.1974). The second is for contraceptive

medications and devices, where the patient is actively involved in the decision and the products are used for extended periods of time without medical assessment. *See Hill v. Searle Labs*, 884 F.2d 1064 (8th Cir.1989); and *Odgers v. Ortho Pharmaceutical Corp.*, 609 F.Supp. 867 (E.D.Mich.1985). These exceptions are consistent with duties imposed on the manufacturers of contraceptives by the *Food, Drug and Cosmetic Act*, 21 U.S.C. § 321 *et. seq.*, 21 C.F.R. § 310.501, and with the public policy underlying the *National Childhood Vaccine Injury Act*, 42 U.S.C. §§ 300aa–1 to 300aa–34.

■ This Court has not found a case from West Virginia courts addressing the learned intermediary doctrine. Nevertheless, the Court believes that West Virginia would adopt such a doctrine for two reasons.

First, the learned intermediary doctrine is based on the principle that the determination of whether certain medications and medical devices should be utilized in any given case requires an individualized medical judgment which can be made only by the patient's physician with knowledge of the patient's characteristics. In turn, the patient can place primary reliance on the judgment of an independent physician, who has an obligation to keep informed with respect to medical products. This information is available to physicians through package inserts, the Physician's Desk Reference, company representatives and Dear Doctor letters. The physician can determine what information to disclose to the patient. Frumer, Friedman and Sklaren, *2 Products Liability*, § 12.08.

Second, West Virginia generally follows the *Restatement of Law* in appropriate cases. A tentative draft amendment to the *Restatement of the Law Third; Torts, Product Liability* has proposed the following topic:

§ 8. LIABILITY OF COMMERCIAL SELLER OR DISTRIBUTOR FOR HARM CAUSED BY PRESCRIPTION DRUGS AND MEDICAL DEVICES

(a) A manufacturer of a prescription drug or medical device who commercially sells or otherwise distributes a defective product is subject to liability for harm to persons caused by the product defect. A prescription drug or medical device is one that may be legally sold or otherwise distributed only pursuant to a health care provider's prescription.

(b) For purposes of liability under Subsection (a), a product is defective if at the time of sale or other distribution:

(1) the drug or medical device contains a manufacturing defect as defined in § 2(a); or

(2) the drug or medical device is not reasonably safe due to defective design or because of inadequate instructions or warnings.

.    .    .    .    .

(d) A prescription drug or medical device is not reasonably safe because of inadequate instructions or warnings when

(1) reasonable instructions or warnings regarding foreseeable risks of harm posed by the drug or medical device are not provided to prescribing and other health care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings; or

(2) reasonable instructions or warnings regarding foreseeable risks of harm posed by the drug or medical device are not provided directly to the patient when the manufacturer knew or had reason to know that no health care provider would be in a position to reduce the risks of harm in accordance with the instructions or warnings.

Although this section of the Restatement has not yet been adopted by the American Law Institute, it clearly reflects the law in an overwhelming number of jurisdictions.

Further, the learned intermediary doctrine is consistent with federal regulations for prescription devices. Pursuant to 21 C.F.R. § 801.109, prescription devices are exempt from the labeling requirements of 21 U.S.C. § 352(f)(1) (requiring "adequate" labeling) if they are, *inter alia*, only available by prescription, have a label stating they are available only by prescription, and any directions, hazards, or warnings are commonly known to licensed practitioners. Thus, a state law requiring the use of a detailed booklet to the

patient would fly in the face of federal regulations regarding drug and medical device labeling.

The plaintiff claims that the warnings to the physicians in 1991 were inadequate because they did not describe the importance of early port removal as a means of avoiding pinch-off syndrome. However, as noted earlier, physicians were well aware of the cause of pinch-off syndrome and the need for radiographic confirmation of catheter placement before 1991. Indeed, Mrs. Pumphrey's treating physician obtained an x-ray the day after insertion of the port in which the catheter appeared to be kinked, an indication that it was being pinched between the first rib and clavicle. Moreover, at the conclusion of her treatment regimen, Mrs. Pumphrey's treating physician made a considered judgment to leave the port in place for possible future chemotherapy. There is no evidence to show that the doctor would have heeded the early removal warning of the manufacturer in the face of this potential for treatment and the apparent success of the port during treatment. Again, this was a judgment for the physician.

The plaintiff also complains that the hospital setting in which she received the catheter did not allow for adequate communication between herself and the surgeon. She states that a nurse gave her the booklet and talked with her about the port, but that the doctor never discussed it with her, did not make the decision to use that particular catheter and port, and did not take any opportunity to inspect the port. The plaintiff correctly states that the learned intermediary doctrine presumes communication between doctor and patient. That communication, of course, is the essence of the professional and healing relationship. Moreover, "[i]t is a recognized and accepted general rule that the [informed] consent of the patient is a prerequisite to treatment or the surgical operation." Vol. 5A *Personal Injury, Physicians and Surgeons* § 10.2(1) (Matthew Bender 1980), quoted in *Cross v. Trapp,* 170 W.Va. 459, 462, 294 S.E.2d 446, 450 (1982). In West Virginia, the duty to disclose such information as is necessary to an informed decision by the patient is imposed on the physician, *Cross,*

*id.,* 294 S.E.2d at 455, and is at the "heart of the doctor-patient relationship." *Belcher v. Charleston Area Medical Center,* 188 W.Va. 105, 112, 422 S.E.2d 827, 834 (1992), *quoting Pauscher v. Iowa Methodist Medical Center,* 408 N.W.2d 355, 362 (Iowa 1987). The state of communication between Mrs. Pumphrey and her surgeon, whatever it may have been, cannot give rise to a duty by the manufacturer above and beyond the duty to warn physicians about the potential dangers of its products. *See, e.g., Belcher, id.,* 422 S.E.2d at 834 (hospital should not interfere in the special relationship between a patient and a privately retained physician).

### IV.

For the reasons stated above, the Court concludes that the defendant manufacturer is entitled to judgment as a matter of law and ORDERS that the defendant's motion for summary judgment (Docket No. 16) be, and it is, GRANTED and this civil action is hereby DISMISSED, with prejudice, and stricken from the docket of this Court.